Matter of Berk (2022 NY Slip Op 06003)

Matter of Berk

2022 NY Slip Op 06003

Decided on October 26, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 26, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
BETSY BARROS
REINALDO E. RIVERA
ROBERT J. MILLER, JJ.

2018-13995

[*1]In the Matter of Irving A. Berk, etc., deceased. Hua Wang, etc., appellant; Harvey Berk, et al., respondents. (File No. 2488/06)

Markewich and Rosenstock, LLP, New York, NY (Eve Rachel Markewich, Lawrence M. Rosenstock, and Michael Busiahvili of counsel), for appellant.
Jaspan Schlesinger, LLP, Garden City, NY (Jessica M. Baquet and Ruskin Moscou Faltischek, P.C. [John G. Farinacci], of counsel), for respondents.

DECISION & ORDER
In a probate proceeding in which Hua Wang petitioned pursuant to SCPA 1421, inter alia, to determine the validity and effect of an election pursuant to EPTL 5-1.1-A asserted by her against the estate of the decedent, Hua Wang appeals from a decree of the Surrogate's Court, Kings County (John G. Ingram, S.), dated July 19, 2018. The decree, upon a decision dated June 27, 2018, made after a nonjury trial, determined that Hua Wang was not entitled under the provisions of EPTL 5-1.1-A to take an elective share of the decedent's estate, and denied the petition.
ORDERED that the decree is affirmed, with costs payable personally by the appellant.
In 1997, Hua Wang (hereinafter the petitioner) was hired as the decedent's live-in caretaker. On June 17, 2005, the petitioner, who was then almost 48 years old, and the decedent, who was then 99 years old, married in a ceremony at the New York City Clerk's office. The decedent died on June 16, 2006. The decedent's will was admitted to probate on October 30, 2006, and letters testamentary were issued to Harvey Berk and Joel Berk, the co-executors of the decedent's estate (hereinafter together the executors). The petitioner, who received no bequest under the decedent's will, commenced this proceeding to determine the validity of her election against the decedent's estate.
On a prior appeal, this Court reversed an order of the Surrogate's Court awarding the petitioner summary judgment on the petition, on the ground that there was a triable issue of fact as to whether she forfeited her statutory right of election by her alleged wrongdoing, that is, by marrying the decedent allegedly knowing that he was a mentally incapacitated person incapable of consenting to a marriage, for the purpose of obtaining pecuniary benefits that become available by virtue of being that person's spouse, at the expense of the decedent's intended beneficiaries (see Matter of Berk, 71 AD3d 883, 885-886). This Court further concluded that the Surrogate's Court improperly directed dismissal of the executors' counterclaims alleging, inter alia, undue influence (see id. at 886).
On a second prior appeal, this Court reviewed an order of the Surrogate's Court which determined that the issues of fact to be determined at trial would be: "(1) Did [the] petitioner know [*2][the] decedent was mentally incapacitated and incapable of consenting to the marriage? and (2) If so, did [the] petitioner take unfair advantage of [the] decedent by marrying him for the purpose of obtaining pecuniary benefits that become available by virtue of being that person's spouse, at the expense of the intended beneficiaries?" (Matter of Berk, 133 AD3d 850, 851 [internal quotation marks omitted]) The Surrogate's Court also determined that the burden of proof was on the executors, and that the standard of proof would be clear and convincing evidence (see id.). This Court modified the order by adding a third issue of fact: "3. Did the petitioner exercise undue influence upon the decedent to induce him to marry her for the purpose of obtaining pecuniary benefits that become available by virtue of being that person's spouse, at the expense of the intended beneficiaries?," and by deleting the provision determining that the standard of proof would be clear and convincing evidence, and substituting therefor a provision determining that the standard of proof would be a preponderance of the credible evidence (id. at 850).
After a 37-day nonjury trial, the Surrogate's Court determined that, at the time of the marriage, the decedent was mentally incapacitated and incapable of understanding the nature, effect, and consequences of the marriage to the petitioner or consenting to the marriage; that the petitioner knew that the decedent was mentally incapacitated at the time of the marriage and entered into the marriage to obtain the pecuniary benefits of said marriage at the expense of the decedent's beneficiaries; that, even if the decedent were competent, the petitioner exercised undue influence over the decedent to induce him to marry her for the pecuniary benefits that became available by virtue of being the decedent's spouse, at the expense of the decedent's beneficiaries; and that through her wrongdoing, the petitioner forfeited her right to take an elective share of the decedent's estate as the decedent's surviving spouse. Accordingly, the court determined that the petitioner was not entitled under the provisions of EPTL 5-1.1-A to take an elective share of the decedent's estate, and denied the petition. The petitioner appeals.
Pursuant to EPTL 5-1.1-A, where a decedent is survived by a spouse, a personal right of election is given to the surviving spouse to take a share of the decedent's estate (see id. § 5-1.1-A[a]). However, a surviving spouse may forfeit, or be equitably estopped from asserting, the statutory right of election where such spouse, "'knowing that a mentally incapacitated person [was] incapable of consenting to a marriage, deliberately [took] unfair advantage of the incapacity by marrying that person for the purpose of obtaining pecuniary benefits that become available by virtue of being that person's spouse, at the expense of that person's intended beneficiaries'" (Matter of Berk, 71 AD3d at 885, quoting Campbell v Thomas, 73 AD3d 103, 121; see Matter of Berk, 133 AD3d at 851). Moreover, an alternative ground for forfeiture of the right of election exists where the surviving spouse exercised "undue influence upon the decedent to induce" the decedent "to marry" the surviving spouse "for the purpose of obtaining pecuniary benefits that become available by virtue of being [the decedent's] spouse, at the expense of the intended beneficiaries" (Matter of Berk, 133 AD3d at 852). In either case, the party claiming wrongdoing on the part of the surviving spouse bears "the burden of proving the wrongdoing by a preponderance of the credible evidence" (id.).
"In reviewing a determination made after a nonjury trial, this Court's power is as broad as that of the trial court, and it may render the judgment it finds warranted by the facts, taking into account that in a close case the trial court had the advantage of seeing and hearing the witnesses" (Annan v New York State Off. of Mental Health, 165 AD3d 1020, 1021 [internal quotation marks omitted]; see Quadrozzi v Estate of Quadrozzi, 99 AD3d 688, 691). "[W]here the trial court's findings of fact rest in large measure on considerations relating to the credibility of witnesses, deference is owed to the trial court's credibility determinations" (Annan v New York State Off. of Mental Health, 165 AD3d at 1021-1022 [internal quotation marks omitted]; see Matter of Tenzer, 144 AD3d 1044, 1045; Bennett v Atomic Prods. Corp., 132 AD3d 928, 930).
Here, the determination of the Surrogate's Court that the executors established by a preponderance of the evidence that the decedent was mentally incapacitated and incapable of consenting to the marriage and that the petitioner took unfair advantage of the decedent by marrying him for the purpose of obtaining pecuniary benefits that became available by virtue of being his spouse at the expense of his intended beneficiaries was warranted by the facts, as was its determination that the executors established by a preponderance of the evidence that the petitioner, [*3]as the decedent's caretaker, exercised undue influence upon the decedent to induce him to marry her for the purpose of obtaining pecuniary benefits that became available by virtue of being his spouse at the expense of the intended beneficiaries (see Matter of Berk, 133 AD3d at 850-852; see also Campbell v Thomas, 73 AD3d 103). The court's determination that the petitioner was not entitled under the provisions of EPTL 5-1.1-A to take an elective share of the decedent's estate, which rested largely on its assessment of the credibility of the witnesses, is entitled to deference (see Matter of Nurse, 160 AD3d 745, 748; Matter of Boatwright, 114 AD3d 856, 859), and there is no basis in the record to disturb it.
Contrary to the petitioner's contention, the Surrogate's Court did not err in precluding certain testimony and evidence during the trial. In any event, even if the court erred in making the evidentiary rulings now challenged by the petitioner, any error, individually or cumulatively, was harmless since there is no indication that the testimony and evidence would have had a substantial influence on the result of the trial (see Sattar v City of New York, 201 AD3d 756, 757; Geary v Church of St. Thomas Aquinas, 98 AD3d 646, 647; Duke v Town of Riverhead, 77 AD3d 702, 703).
DUFFY, J.P., BARROS, RIVERA and MILLER, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court