Chief Judge Fuld.
We thoroughly agree with the courts below that the claimants are entitled to only nominal damages because the three damage parcels before us were encumbered by public easements. Indeed, we would be content to affirm on the opinion by Special Term (66 Misc 2d 324) were it not for the fact that our dissenting brothers treat of matters which, though subsumed, were not discussed by that court.
It is true, as stated in the dissent, that a street “ dedication ” does not create a public easement unless there is evidence of an acceptance by the public of an offer to dedicate the street and that public easements may be abandoned by nonuser under section 205 of the Highway Law but neither of those principles of law is applicable to India Street, the street here involved. What is significant is that the portion of India Street with which we are concerned ran to a wharf on the East River waterfront in New York Harbor and that such a street—created by a statutory grant as a means of public access to a wharf on lands simultaneously granted by the State to riparian owners—may not-be *101 equated with, or treated like, a country highway or an ordinary city street.
The question of acceptance of a dedication does not arise in this case in view of the fact that the development of India Street into a public street in 1849 did not stem from creation by dedication. Acceptance by the public, a step said to be lacking here, was, therefore, not required. Dedication of a street, the court declared in Scarborough Props. Gorp. v. Village of Briarcliff Manor (278 N. Y. 370, 377), “ ‘ is essentially of the nature of a gift ’ ” by a private owner to the public and it becomes effective when the gift is accepted by the public.[1] The claimants ’ predecessors in 1849 gave nothing and, accordingly, there was nothing for the public to accept. On the contrary, it was the claimants’ predecessors who were on the receiving end in 1849. The State enacted a statute which gave those riparian owners the valuable lands under water on the express condition that they would set aside public streets giving access to the waterfront "forever ’ ’ (L. 1849, ch. 302).[2] The only acceptance required was on the part of the recipients, the riparian owners, and, in point of fact, they did accept the grant on the explicit conditions specified. Thus, as found by the courts below, they filled in the granted land as required, made the contemplated improvements, constructed extensions of India Street to the water and erected abutting structures.
The circumstance that the part of India Street under consideration was a street adjacent and leading to a wharf in New York Harbor and created under a statutory grant explicitly declaring it to be a public street “ forever ”, has a bearing also on the question of abandonment by reason of nonuser under *102 section 205 of the Highway Law. That statute has been held not to apply where the fee to lands has been condemned for highway purposes. (See New York Cent, & H. R. R. R. Co. v. City of Buffalo, 200 N. Y. 113, 119-120.) Although India Street did not come into being by a condemnation taking in fee, the manner of its creation just as surely removed it from the ambit of section 205. The portion of India Street comprising Damage Parcels 2 and 3 was created by the filling in of lands below high-water mark. There was, therefore, a necessary extension, in perpetuity, of the public right of access over the filled in area, from the old high-water mark to the new wharf line, further out in the tidal waters. The public right in such property is described in Matter of City of New York (Main St.) (216 N. Y. 67) as a right of passage from the terminus of a street at the high-water line to tidal waters, a right which is extended by any filling which extends the upland further out into such waters (pp. 75-76):
‘ ‘ A perpetual right of way exists in favor of the public between the terminus of a street at the high-water line of navigable tidal waters and those waters. The public had a right to pass directly from the street to the sound and from the sound to the street — a right of passage over the place where the land highway and navigable waters meet. Whenever under lawful ownership or authority the waters bounding the end of a street are displaced by earth or other filling, or a wharf or structure is built out from the street into the waters, the easement of the street is extended by operation of law to the end of the filling or the structure.”
In reaching our decision, we but apply the settled principles reflected in the case from which we have just quoted (216 N. Y. 67, supra). The part of India Street consisting of Damage Parcels 2 and 3 came into being in perpetuity not only by force of established common law, relating to the foreshore, as set forth in that case but by express provision of the 1849 statutory grant-which effected a gift of public lands under water — Damage Parcels 2 and 3—to the claimants’ predecessor in title. As previously noted (p. 101, n. 2), it was provided (L. 1849, ch. 302, § 5) that, “ [a]fter the streets designated on the aforesaid map * * * shall be made by the owners respectively whose prop *103 erty fronts on them, they shall forever remain and he public streets (Emphasis supplied.) Damage Parcel 1 encompasses the eastern segment of India Street. It was laid out 10 years prior to the 1849 grant. Since the abutting owners of Parcel 1 were the riparian owners who were the recipients of the 1849 grant, their acceptance of that grant, on condition that India Street — the portion in Damage Parcels 2 and 3 — give public access to the wharves and tidewater “ forever ”, necessarily extended the identical public rights to the Damage Parcel 1 section of India Street. If the public in 1849 had not acquired such rights in the Damage Parcel 1 portion, the public would have been excluded from the use of the wharves and from access to the tidewater built on land which the State had contemporaneously given to the riparian owners. Such an absurd conclusion could never have been contemplated and, in any event, the express words of the 1849 grant do not permit such a conclusion.
One final word. The claimants, by placing a gate across India Street and hiring a guard to shoo people away from the area for six years did not, by such conduct, terminate this public street running to harborfront wharves. Indeed, there is an affirmed finding that “ for more than a century [it has been] burdened by easements as a public street ”, and there is supporting evidence in the record that the street was paved with cobblestones and was being used by as many as 350 trucks a day at the time of the condemnation. Since abandonment denotes a complete nonuser, such a street may not be deemed ‘ ‘ abandoned ’ ’ within the sense of the Highway Law.
The order appealed from should be affirmed, with costs.

. The court in the Scarborough Props. Gorp. case concluded that the offer by the plaintiff to “ give ” streets to the village for a substantial payment was a contractual offer and not an offer to dedicate. As Judge Lehman, writing for the court, put it (278 M. Y., at p. 379), “ The rights of the parties are not affected by the circumstance that the plaintiff chose to call its offer an offer to dedicate instead of an offer to convey.”

. The applicable statute read, in part, as follows (L. 1849, eh. 302, § 5): “ After the streets designated on the aforesaid map drawn by Daniel Ewen, city surveyor, and running from high water mark into the East river, shall be made by the owners respectively whose property fronts on them, they shall forever remain and be public streets for the free and common use and passage of the inhabitants of the county of Kings, and all others lawfully passing or repassing the same ’ ’.